555 A.2d 218

COMMONWEALTH of Pennsylvania

v.

William LAVELLE, III, Appellant.

COMMONWEALTH of Pennsylvania

v.

LAVCO, INC., Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 1989.

Decided Feb. 15, 1989.

Reargument Denied March 14, 1989.

358

Charles P. Gelso, Wilkes–Barre, for Lavelle, appellant (at 2928).

Albert J. Slap, Philadelphia, for Lavco, appellant (at 3129).

Keith Welks, Deputy Attorney General, Harrisburg, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and POPOVICH, JJ.

McEWEN, Judge:

These consolidated appeals were undertaken from the judgments of sentence imposed upon appellants, William A. Lavelle, III,[1] and Lavco, Inc.,[2] after the trial court, sitting without a jury, found each of them guilty of violations of the corrupt organizations statute, 18 Pa.C.S. § 911.[3]

The able opinion of the distinguished President Judge Edwin M. Kosik provides an apt summary of the facts giving rise to the prosecution of appellants:

The trial developed that defendant Lavelle was President of Control Sanitation Corporation which engaged in the collection and disposal of refuse. On November 7, 1977, a family corporation known as W.A. Lavelle & Son Co. was incorporated in Pennsylvania. Lavelle was its President. Both companies operated out of an office and garage located at 1620 North Keyser Avenue, Scranton. During the period of its existence until March 1979, Lavelle & Son engaged in the business of hauling and disposition of industrial wastes in solid and liquid form. Such materials were systematically dumped or disposed of at the Morgan Highway landfill or poured down a mine borehole located at the office address of both companies

1. William A. Lavelle, III, was convicted of conducting the affairs of an enterprise through a pattern of racketeering activities, conduct prohibited by 18 Pa.C.S. § 911(b)(3), and investing income, realized from a pattern of racketeering activity in which he had participated as a principal, in an enterprise, a violation of 18 Pa.C.S. § 911(b)(1). Lavelle was sentenced to serve a term of imprisonment of not less than eighteen months nor more than five years, and to pay a fine of $25,000 and costs of prosecution.

2. Lavco, Inc. was convicted of investing, in an enterprise, income derived from a pattern of racketeering activity in which it had participated as a principal, a violation of 18 Pa.C.S. § 911(b)(1). Lavco, Inc. was sentenced to a fine of $25,000.

3. Wm. A. Lavelle & Son, Co., which has not appealed from the judgment of sentence, was also convicted of violating 18 Pa.C.S. § 911(b)(3) which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Wm. A. Lavelle & Son, Co., a Pennsylvania corporation, was sentenced to pay a fine of $25,000.

then in existence, to wit, 1620 Keyser Avenue, Scranton. Employees engaged in the hauling of the industrial waste were instructed by Lavelle to dispose of the waste at each site. Lavelle reported that the borehold at Keyser Avenue deposited the waste into a holding tank or the lines of the Scranton Sewer Authority. Lavelle, at one point, instructed that windows at the borehole site be painted. Neither site was officially approved for the receipt of industrial waste, nor was the site owner or Lavelle provided with any oral or written permit to dump the industrial waste as required by law.

Lavelle solicited the business of several companies whose operations resulted in the generation of industrial wastes as a by-product. Such wastes had to be disposed of in an appropriate facility. The representatives of the various companies solicited by Lavelle consistently testified that Lavelle personally or through reference represented the epitome of reliability in the field of disposal. Lavelle offered a series of documents which allegedly represented permits for the disposition of waste at various sites, along with letters of recommendation from exisiting customers. In each instance Lavelle assured his customers that disposal would conform with the requirements of both state and federal laws. In at least one instance Lavelle was provided with a sample of a waste by-product to determine if it was acceptable at the Morgan landfill site. The waste generator was orally advised by Lavelle that it was approved and that representatives of the state continued to monitor the landfill operations as material was received. During the period covered in the indictment, there were over seven hundred instances in which Lavelle had contracts or purchase orders to haul and dispose of wastes for a consideration which would not have been authorized had the waste providers known of the deception and false impressions as to the intentions of Lavelle in disposing of the industrial wastes. In the fiscal year October 31, 1978, ending October 31, 1979, Lavelle and Son received over four hundred thousand dollars as [gross] income from undocumented disposal of

industrial waste; that is, waste disposed of by Lavelle and Son without documentation as to where such wastes were specifically deposited. The Commonwealth offered evidence that Lavelle was aware of the permit requirements in order to dump industrial wastes at the Morgan landfill. In June of 1978 Lavelle and Son apologized for dumping industrial waste without a permit on one stated instance. There was evidence that in the latter part of 1978 or the early months of 1979 there was much publicity over another local hauler of industrial waste who was being investigated for illegal dumping on a site located within miles of the Lavelle and Son disposals. Lavelle was aware of this investigation and assured at least one of his customers that there was no connection. Soon thereafter, Lavelle represented to customers that it was becoming more difficult to get state approval for the disposition of wastes at sites utilized by him. Thence, Lavelle commenced a withdrawal from the disposal business, and just continued to haul the wastes to locations determined by the customer. In fact, the last date Lavelle and Son performed a service [resulting in illegal dumping] was on March 29, 1979.

It appears from the evidence that when Lavelle and Son ended its corporate activity as a hauler and disposer of industrial wastes, a new corporation, the defendant Lavco, Inc. took over the work of just hauling industrial wastes which had previously been contracted out to Lavelle and Son. Lavco is a Pennsylvania corporation which was incorporated on December 21, 1978. Members of the Lavelle family, except the defendant Lavelle, are officially and legally the incorporators, stockholders and officers of Lavco. While Lavelle appears to have no official connection with Lavco, he continued to represent Lavco in soliciting business, and as will appear more clearly later, he identified and held himself out as the owner and President of Lavco. Substantial assets of Lavelle and Son were sold to Lavco for a consideration. In addition, monies were loaned to Lavco by Lavelle and Son (labor

and other expenses paid by Lavelle and Son), and the employees of Lavelle and Son continued as the employees of Lavco. Lavco at one point made a substantial loan to defendant Lavelle. The Commonwealth has established that between June 1979 and February 1981 there was an aggregate flow of $118,845.00 from Lavelle and Son to Lavco. Of course, a substantial portion of this was repaid by Lavco.

## I. *Appeal of William A. Lavelle, III*

The sole issue raised in the appeal of William A. Lavelle, III, is that he is entitled to discharge by virtue of the fact that the proceedings against him were instituted after the period prescribed by the applicable statute of limitations had expired. Appellant contends that the five year statute of limitations provided by 42 Pa.C.S. § 5552(b)(1), effective July 12, 1982, cannot be retroactively applied to the instant prosecution when the last predicate offense occurred in June of 1979. Rather, appellant argues, the former two year statute of limitations contained at 42 Pa.C.S. § 5552(a) is applicable, so that the criminal complaint issued against appellant on August 5, 1983, was time barred.[4]

The Attorney General argues that the amended five year statute of limitations should be applied retroactively, but that even if the former two year statute of limitations were to be applied, the prosecution was instituted in a timely fashion since the date of the last predicate act is irrelevant in determining the date upon which the statute of limitations commences.

The violations of the corrupt organizations statute committed by appellant are continuing offenses in that the offenses are "deemed to continue so long as the person who committed the violation continues to receive any benefit from the violation." 18 Pa.C.S. § 911(c). Thus, as the trial court correctly concluded, the statute of limitations does not

4. On May 13, 1982, the Judicial Code was amended and the statute of limitations for violations of the Corrupt Organizations Act was expanded to five years by the Act of May 13, 1982, P.L. 417, No. 122, § 1, 42 Pa.C.S. § 5552(b), effective July 12, 1982.

commence running upon the date on which the last predicate offense is committed but instead, commences upon the date on which the defendant last receives a benefit from the offense. 18 Pa.C.S. § 911(c). Since the statute of limitations period did not begin to run until the continuing violations of the Act, in the form of the receipt of benefits, ceased, we must determine at what point in time appellant Lavelle last received a benefit from his violations of Section 911(b)(1) and (b)(3) of the Corrupt Organizations Act.

### A. Charges against William A. Lavelle, III arising under 18 Pa.C.S. § 911(b)(3)

Appellant was charged with and convicted of violating section 911(b)(3) of the Act which provides:

### § 911. Corrupt organizations

\* \* \* \* \* \*

(b) Prohibited activities.—

\* \* \* \* \* \*

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S. § 911(b)(3).

Thus, in order to convict appellant of a violation of 18 Pa.C.S. § 911(b)(3), the Commonwealth was required to prove that:

(1) appellant was an employee of, or associated with, Wm. A. Lavelle & Son, Co.,

(2) appellant participated, directly or indirectly, in the conduct of the affairs of Wm. A. Lavelle & Son, Co., and

(3) Wm. A. Lavelle & Son, Co.'s affairs were conducted through a pattern of racketeering activity.[5]

■ Appellant's conviction under subsection (b)(3) rested, as recounted by the trial court in the aforequoted factual

---

5. "Racketeering activity" is defined as including, *inter alia,* any act indictable under Chapter 39 of the Crimes Code (theft and related offenses). *See:* 18 Pa.C.S. § 911(h)(1).

summary, upon evidence of a series of thefts by deception committed by appellant in the course of his conduct of the affairs of the corporate enterprise of Wm. A. Lavelle & Son, Co. The company's final receipt of income from the disposal of hazardous waste was received on June 29, 1979.[6] However, pursuant to section 911(c), the violation of 18 Pa.C.S. § 911(b)(3) continued so long as appellant continued to receive any benefit from conducting the affairs of Wm. A. Lavelle & Son, Co. through a pattern of racketeering. The Commonwealth established that appellant received "loans" from Wm. A. Lavelle & Son, Co., totalling approximately $39,000, and that the last such "loan" occurred, on October 13, 1979. Appellant, however, also received substantial cash payments, designated as wages, from Wm. A. Lavelle & Son, Co. through the last quarter of 1979. Thereafter, appellant received substantial cash payments, designated as wages, from Lavco, Inc. through February of 1981. The last transfer of funds from Wm. A. Lavelle & Son, Co. to Lavco, Inc. occurred in February of 1981. These cash payments were receipts of benefits derived from the racketeering offense. Thus, the violation of 18 Pa.C.S. § 911(b)(3) continued at least until February of 1981.[7] The Commonwealth argues, however, that appellant Lavelle continued to receive a benefit so long as these loans remained unpaid and were carried on the books of Wm. A. Lavelle &

6. While the opinion of the trial court suggested March of 1979 as the last date upon which appellant William A. Lavelle, III engaged in racketeering activity, the record indicates that the last date upon which appellant received payment for illegal dumping was June 29, 1979.

7. Due to the confused state of the record and the absence of the Commonwealth's exhibits Nos. 101, 102 and 103, we are unable to ascertain many of the exact dates of the various transfers of monies between the defendants. The opinion of the trial court notes that the last transfer of funds between Lavco, Inc. and Wm. A. Lavelle & Son, Co. occurred in February of 1981. Our review of the record discloses that Wm. A. Lavelle & Son, Co. paid, in February of 1981, an insurance bill of $1,270.00 owed by Lavco, Inc. The last "loan" from Wm. A. Lavelle & Son, Co. to William A. Lavelle, III appears to have occurred on October 31, 1979. We have, however, used the date of February 1981 throughout this opinion as the last date of a transfer of funds as we have been unable to discern evidence of any later transfer between any of the defendants.

Son, Co., as accounts receivable. It appears from our review of the record that these loans were never repaid and, according to the Attorney General, were maintained on the books of the corporation "until at least the last quarter of 1982." [8] Thus, the Attorney General argues in this appeal that appellant continued to receive a benefit until "at least the last quarter of 1982".[9]

If we were to accept the argument of the Commonwealth, we would be forced to conclude that because the loans remained unpaid, appellant is still *enjoying a benefit* and that, as a result, the statutory period of limitations has not yet commenced. This argument is spurious since it ignores the plain language of section 911(c) which tolls the statute for only so long as benefits are "received", rather than "enjoyed", and would result in the elimination of the statute of limitations in many, if not all, prosecutions under the Act.[10]

Since we have concluded that the violation of 18 Pa.C.S. § 911(b)(3) by William A. Lavelle III continued, as a result of his receipt of benefits arising from the violation, until at least February of 1981, it is upon this date that the statute of limitations commenced running.

■ The statute of limitations applicable, in February of 1981, to violations of the Corrupt Organization Act was the two year statute of limitations formerly provided by 42 Pa.C.S. § 5552(a). This two year limitations period would have expired in February of 1983. However, on May 13,

8. We have been unable to ascertain from the record what event caused the Commonwealth to charge in the indictment that the offense continued "until on or about October 31, 1981."

9. The prosecution is at least inconsistent when it takes the position that, even though the loan is outstanding, once the books of the corporation ceased to reflect the loans as outstanding, the enjoyment of the benefit by appellant ended.

10. If a defendant engaged in racketeering activity for a period of six months and, after ceasing all such activities, used all of the funds realized from his racketeering as a down payment on a home, the argument of the prosecutor would require that a court find that the offense was still continuing 25 years later because the defendant still resided in and continued to enjoy the home which had been purchased in part with funds realized from the racketeering activity.

1982, prior to the expiration of the statute of limitations, the legislature enlarged the two year statute of limitations provided by 42 Pa.C.S. § 5552(a) to five years for certain offenses, effective July 12, 1982.   42 Pa.C.S. § 5552(b). Thus, the issue presented by the appeal of William A. Lavelle, III, is whether the five year statute of limitations, which became effective prior to the expiration of the former two year limitations period, is applicable to these offenses.

This Court resolved this issue in the *en banc* decision of *Commonwealth v. Harvey,* 374 Pa.Super. 289, 542 A.2d 1027 (1988).   The Court held that where a prosecution has not yet been commenced, and the applicable period of limitations is enlarged by the legislature, the new and expanded period of limitations is applicable, so long as at the time of the enactment of the new period of limitations, the right of the Commonwealth to proceed with a prosecution had not yet been barred under the former statute of limitations. *Id.,* 374 Pa.Superior Ct. at 294, 542 A.2d at 1029.   The Supreme Court of Pennsylvania thereafter analyzed this very issue and reached the same conclusion.   *Commonwealth v. Johnson,* 520 Pa. 165, 553 A.2d 897 (1989).

In the instant case, the violation of Section 911(b)(3) of the Corrupt Organizations Act by William A. Lavelle III, continued, as a result of his continued receipt of benefits from earlier predicate acts in violation of the Act, until February of 1981.   Thus, on July 12, 1982 (the effective date of the Act of May 13, 1982, P.L. 417, No. 122, § 1, 42 Pa.C.S. § 5552(b)), the former two year statute of limitations had not yet expired and the five year period of limitations provided by 42 Pa.C.S. § 5552(b) became applicable to the prosecution which was commenced by the filing of a criminal complaint on August 5, 1983.

B.   Charges against William A. Lavelle, III arising under 18 Pa.C.S. § 911(b)(1)

Appellant was also convicted of violating 18 Pa.C.S. 911(b)(1) which provides, in pertinent part:

§ 911.   Corrupt organizations.

\*      \*      \*      \*      \*      \*

(b) Prohibited activities.—

(1) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise. . . .

18 Pa.C.S. § 911(b)(1).

Thus, the Commonwealth had the burden of proving that:

(1) appellant was in receipt of income,

(2) the income had been derived directly or indirectly from a pattern of racketeering activity,

(3) appellant had participated as a principal in the racketeering activity, and

(4) appellant used or invested, directly or indirectly, part of this income, or the proceeds of such income, in the acquisition of an interest in or the establishment or operation of, any enterprise.

The evidence at trial established that appellant participated, as a principal, in Wm. A. Lavelle & Son, Co.'s racketeering activities during the period between 1976 and 1979 and that appellant received substantial income from that racketeering activity. Appellant invested part of this income in Lavco, Inc., which utilized the funds for the initial establishment of the business, as well as for its ongoing operating expenses. As heretofore noted, the record indicates that the last transfer of funds from Wm. A. Lavelle & Son, Co., to Lavco, Inc. in February of 1981. Thus, appellant's violation of 18 Pa.C.S. § 911(b)(1) continued through February of 1981 and was, therefore, pursuant to our earlier analysis, subject to the five year statute of limitations provided by 42 Pa.C.S. § 5552(b).

We find, therefore, that the prosecution of appellant William A. Lavelle III for violations of 18 Pa.C.S. § 911(b)(1) and (b)(3) was timely commenced. We, therefore, affirm the judgment of sentence imposed upon William A. Lavelle, III.

## II.  Appeal of Lavco, Inc.

A.  *Imposition of criminal liability upon Lavco, Inc. for acts committed by William A. Lavelle & Son, Co.*

Appellant Lavco, Inc. argues, *inter alia,* that it is entitled to discharge because it did not violate Section 911(b)(1) of the Corrupt Organizations Act since it did not participate as a principal in any racketeering acts or predicate offenses as required by 18 Pa.C.S. § 911(b)(1).

The complaint filed against Lavco, Inc. charged that: On or about February 20, 1976 and continuing until on or about January 31, 1982 in said county, Lavco, Inc., did unlawfully use and invest income and the proceeds of income derived directly and indirectly from a continuous pattern of racketeering activity *in which it participated as a principal,* comprising almost seven hundred separate thefts by deception which at all times material was against the law of the Commonwealth, each of which is a predicate offense, and the formation of a conspiracy with William A. Lavelle, III; William A. Lavelle IV; Michele Lavelle Mandarino, and other persons known and unknown to commit these thefts, in the acquisition of interest in and the establishment and operation of an enterprise, to wit, Lavco, Inc., while associated with W.A. Lavelle and Son Co. and acting in concert with others so situated used and invested income and the proceeds of income derived from contracts with the following companies for the payment to W.A. Lavelle and Son Co. for the removal, transportation, and lawful disposal of their industrial and other wastes by W.A. Lavelle and Son Co. but which wastes William A. Lavelle, III, and W.A. Lavelle and Son, Co. never intended to and in fact never did lawfully dispose of, thus creating a false impression as to value, intention and state of mind, in violation of 18 Pa.C.S. § 903 and § 3922:

1.  *Peter Paul Cadbury*—242 thefts from February 20, 1976 through November 11, 1978.

2. *Standard Coated Products*—133 thefts from March 25, 1977 through June 18, 1979.

3. *Marisol*—194 thefts from June 29, 1977 through February 8, 1978.

4. *Tenneco*—25 thefts from June 29, 1977 through February 8, 1978.

5. *Spectron*—59 thefts from May 1, 1978 through March 13, 1979.

6. *Inland Container*—19 thefts from February 9, 1978 until September 21, 1978.

7. *National Can Company*—13 thefts from April 25, 1978 through February 21, 1979.

8. *Smith Kline Beckman*—ten thefts from February 6, 1979 through March 16, 1979.

In the acquisition, establishment and operation of Lavco, Inc., and that Lavco, Inc. still enjoyed a benefit from the income derived by this violation at least until January 31, 1982; and that William A. Lavelle, III; W.A. Lavelle and Son Co., and Lavco, Inc.; at all times material to this indictment constituted an enterprise within the meaning of 18 Pa.C.S. § 911(b)(3), to wit an individual and businesses associated in fact through the control and direction of William A. Lavelle, III, with the goal of committing the aforementioned thefts by deception and utilizing the proceeds in the continuing operation of one or more waste disposal companies. 18 Pa.C.S. § 911(b)(1).

Thus, the Commonwealth was required to establish: (1) that Lavco had received income,

(2) the income had been derived, directly or indirectly, from a pattern of racketeering activity,

(3) that Lavco had participated as a principal in the racketeering activity, and

(4) that Lavco had invested or used the income from the racketeering activity in the establishment or operation of an enterprise.

However, contrary to the allegations of the complaint, the prosecution concedes that *no* evidence was offered to estab-

lish that Lavco, Inc. participated in any racketeering activity, as a principal or otherwise, or that Lavco invested, in any other enterprise, any income realized by it from racketeering activity in which it had participated as a principal.

The Commonwealth argues, however, that the trial court properly found appellant Lavco, Inc. guilty of violating 18 Pa.C.S. § 911(b)(1) for the reason that Lavco, Inc. "was a continuation—successor of Wm. A. Lavelle & Son, Co., which participated as a principal in the racketeering pattern." [11]

The precise issue presented by the appeal of Lavco, Inc., namely, whether a *de facto* successor corporation can be held criminally liable for the acts of its predecessor in interest, is one of first impression in this Commonwealth. However, the issue of the liability of a successor corporation for compensatory and punitive damages resulting from the conduct of its predecessor has been previously addressed by our appellate courts. Thus, we rely for guidance upon established principles of tort law, believing that reference to principles developed in the civil law is appropriate under the circumstances of this case since "a corpora-

11. For reasons escaping our comprehension, Wm. A. Lavelle & Son, Co. was not charged with violating 18 Pa.C.S. § 911(b)(1) but, rather, was charged with and convicted of violating Section 911(b)(3). The plain language of the statute requires that the individual defendant or entity be *"employed by* or *associated with"* an enterprise and "conduct such enterprise's affairs through a pattern of racketeering activities." (emphasis supplied). The corporation could not have been employed by or associated with itself. *See: e.g., Cullen v. Margiotta,* 811 F.2d 698, 729 (2nd Cir.1987); *United States v. Benny,* 786 F.2d 1410, 1414–1416 (9th Cir.1986), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. DiCaro,* 772 F.2d 1314, 1319–1320 (7th Cir.1985) *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd.* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Computer Sciences Corporation,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). While cases interpreting the federal RICO statute are not controlling in proceedings arising under the corrupt organizations statute, *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 184 n. 2, 475 A.2d 744, 748 n. 2 (1984), the "employed by or associated with" language of Section 911(b)(3) is identical to the corresponding provisions of the federal Racketeer Influenced and Corrupt Organizations Act. *See:* 18 U.S.C. § 1962(c).

tion cannot be sent to jail. The discharge of its liabilities whether criminal or civil can be effected only by the payment of money." *Melrose Distillers, Inc. v. United States,* 359 U.S. 271, 274, 79 S.Ct. 763, 766, 3 L.Ed.2d 800 (1959).

The trial court found that Lavco, Inc. was liable for the criminal acts of Wm. A. Lavelle and Son, Co., which had been committed prior to the incorporation, on December 21, 1978, of Lavco, Inc., based upon its finding that "Lavco, Inc. was conceived to be, and did become the *de facto* successor and a continuation of Wm. A. Lavelle and Son, which remained nothing more than a shell. When such a continuation exists, as demonstrated by the evidence in this case, we believe that the continuing corporation ought to be criminally liable for the acts of its predecessor in fact."

The trial court based its conclusion upon the following facts:

The Lavelle corporation through Lavelle & Son generated in excess of $400,000 in income from undocumented disposal alone. These monies were generated in the fiscal period October 31, 1978 and ending October 31, 1979, and were used in a successful operation for the hauling and disposal of industrial wastes. During the better part of 1978 and early part of 1979 there was much publicity about another local hauler of industrial waste who was being investigated for illegal dumping. Although he was not associated with this operation, Lavelle was soon to represent to customers that it was becoming more difficult to receive state approval for the disposition of industrial wastes. Lavelle and Lavelle and Son withdrew from the disposal business, but continued to haul waste to locations determined by others. This continuing venture concluded when the last service was performed by Lavelle & Son on March 29, 1979. Any contract Lavelle & Lavelle & Son had for hauling material was thereafter performed by a new entity on the scene, Lavco, which was incorporated on December 21, 1978. The lawyer who incorporated Lavco did business with Lavelle, but the latter nowhere appears as a person with a legal interest

in Lavco, either as a stockholder or officer. However, the following does appear: Lavco operated out of the same garage where Lavelle & Son was situated, 1620 Keyser Avenue, Scranton; Lavco continued the same business activity of hauling industrial wastes, and with the same customers. Lavco had work performed by employees of Lavelle and Son; eventually all of the Lavelle and Son employees became Lavco employees; Lavelle continued to solicit business for Lavco as he was accustomed to in the case of Lavelle & Son; Lavelle continued as the most visible representative of Lavco; Lavelle represented himself to be President of Lavco to the State of Virginia; he signed a contract with a banking institution as President of Lavco; Lavelle made application for a hazardous waste license for Lavco as President; Lavelle pledged his personal assets on a loan for Lavco; Lavco applied to Blue Cross/Blue Shield for an extension of the Lavelle and Son policy claiming it was a name change in companies; Lavco assumed various accounts payable by Lavelle and Son; Lavco identified itself to the Pennsylvania Department of Labor and Industry as a successor corporation to Lavelle and Son and was given the same rate applicable to Lavelle and Son; Lavco acquired through sale from Lavelle and Son its primary asset, the trucks used for hauling; Lavco loaned money to Lavelle which remained unpaid; and after the sale of the trucks for a consideration to Lavelle and Son, the latter used the major part of the consideration to make other payments on behalf of Lavco."

The court also noted that Wm. A. Lavelle "was represented by a public defender; Lavelle and Son had no representative except for the effort of the public defender, while the thrust of the paid defense was to save Lavco, the sole depository of the Lavelle enterprises."

The Commonwealth argues that although there was no *de jure* consolidation or merger, Lavco is a mere continuation–successor to Wm. A. Lavelle & Son, Co. and is, therefore,

criminally liable for the acts committed by Wm. A. Lavelle & Son, Co.

Ordinarily when one company sells or transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor simply by virtue of its succession to the transferor's property. In order to find that this general rule is not applicable and that the transferee does acquire such liability, one of the following must be shown: (1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability. *See Granthum v. Textile Machine Works*, 230 Pa.Super. 199, 326 A.2d 449 (1974). A fifth circumstance, sometimes included as an exception to the general rule, is where the transfer was without adequate consideration and provisions were not made for creditors of the transferor. *See Lopata v. Bemis Co., Inc.*, 383 F.Supp. 342 (E.D.Pa.1974); *McKee v. Harris–Seybold Co., Division of Harris–Intertype Corp.*, 109 N.J.Super. 555, 264 A.2d 98 (1970); 19 Am.Jr.2d Corporations § 1546 (1965); 15 W. Fletcher, *Cyclopedia of Corporations* § 7122 (Perm.ed.1973).

*Husak v. Berkel, Incorporated*, 234 Pa.Super. 452, 456–457, 341 A.2d 174, 176–177 (1975). *Accord: Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 18, 434 A.2d 106, 107 (1981); *Granthum v. Textile Machine Works*, 230 Pa.Super. 199, 202, 326 A.2d 449, 451 (1974); *Knapp v. North American Rockwell Corp.*, 506 F.2d 361, 363 (3rd Cir.1974), *cert. denied, North American Rockwell Corp. v. Knapp*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975); *Amader v. Pittsburgh Corning Corporation*, 546 F.Supp. 1033, 1035 (E.D.Pa.1982); *Wright v. Federal Machine Co., Inc.* 535 F.Supp. 645, 648 (E.D.Pa.1982); *Savini v. Kent Machine Works, Inc.*, 525 F.Supp. 711, 715 (E.D.Pa.1981); *Uni–Com Northwest, Ltd. v. Argus Publishing Co.*, 47 Wash.App. 787, 800, 737 P.2d 304, 311 (1987); *Turner v. Bituminous*

*Casualty Co.*, 397 Mich. 406, 417 n. 3, 244 N.W.2d 873, 878 n. 3 (1976).

The Commonwealth concedes that there was no legal merger or consolidation of the two corporations but contends that Lavco was formed with the sole objective of protecting, from criminal and civil proceedings, the funds realized by Wm. A. Lavelle & Son, Co. from its racketeering activities and that, as part of that plan, Wm. A. Lavelle & Son, Co. was transformed into a mere shell corporation, devoid of assets. The Commonwealth argues that to find that there was not a *de facto* merger of Wm. A. Lavelle & Son, Co. and Lavco, based solely upon the absence of articles of merger or consolidation, would be to ignore the evidence presented in this case, and would permit corporations engaged in criminal activity to escape all criminal liability for their conduct by simply forming successive corporations to shelter their ill gotten gains.

In approaching the issue of the *"de facto* merger"/"mere continuation" theory of liability, we are mindful of the admonition of our Supreme Court, albeit made in the context of dissenting shareholders' rights, that "it is no longer helpful to consider an individual transaction in the abstract and solely by reference to the various elements therein to determine whether it is a 'merger' or 'sale'. Instead to determine properly the nature of a corporate transaction, we must refer not only to all the provisions of the agreement, but also to the consequences of the transaction and to the purposes of the provisions of the corporation law said to be applicable." *Farris v. Glen Alden Corp.*, 393 Pa. 427, 432, 143 A.2d 25, 28 (1958).

The Commonwealth has referred to both the mere continuation exception and the *de facto* merger exception to transferee liability in its argument on corporate successor liability. We have elected to analyze this issue under the *de facto* merger doctrine, which we believe to be applicable to the instant case. Employment of the mere continuation theory of liability would not alter our resolution of the issue since the two theories are difficult to distinguish:

"[T]he first of the four exceptions rendering the purchasing corporation liable for duties of the seller is a transaction amounting to a merger or consolidation. In a merger a corporation absorbs one or more other corporations, which thereby lose their corporate identity. 'A merger of two corporations contemplates that one will be absorbed by the other and go out of existence, but the absorbing corporation will remain'.... 'Another of the ... exceptions to the general rule of nonliability arises when there is a continuation. In a continuation, a new corporation is formed to acquire the assets of an extant corporation, which then ceases to exist.' There is in effect but one corporation which merely changes its form and ordinarily ceases to exist upon the creation of the new corporation which is its successor."

*Knapp v. North American Rockwell Corp.*, *supra* at 506 F.2d at 365 (footnotes omitted). *See also: Dawejko v. Jorgensen Steel Co.*, *supra* 290 Pa.Super. at 20, 434 A.2d at 108.

"For a *de facto* merger to occur, there must be continuity of the successor and predecessor corporation as evidenced by (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor, and (4) a continuity of management, personnel, physical location, aspects, and general business operation. 'Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a *de facto* merger.' "

*Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1535 (S.D.N.Y. 1985) *quoting Menacho v. Adamson United Co.*, 420 F.Supp. 128, 133 (D.C.N.J.1976) (citations omitted). *Accord: Dawejko v. Jorgenson Steel Co.*, *supra* 290 Pa.Super. at 20, 434 A.2d at 108. *See also: Lackawaxen Water & Sewer Co. v. Pennsylvania Public Utility Commission*, 85 Pa. Cmwlth. 377, 380, 481 A.2d 1386, 1388 (1984).

■ The evidence presented by the Commonwealth, and accepted by the trial court sitting as the trier of fact, provided proof beyond a reasonable doubt that Lavco, Inc. was the successor corporation of a *de facto* merger. Uncontradicted evidence established the (1) continuity of management (William A. Lavelle, III represented himself as President of Lavco, Inc., was its most visible representative, and solicited business for Lavco, Inc., just as he had for Wm. A. Lavelle & Son, Co.); (2) continuity of personnel (all of the employees of Wm. A. Lavelle & Son, Co. became employees of Lavco, Inc.); (3) continuity of physical location, assets and general business operations (Lavco operated out of the premises formerly used by Wm. A. Lavelle & Son, Co., purchased its major assets and took over all of its contracts). There was also a cessation of ordinary business by Wm. A. Lavelle & Son, Co. shortly after the formation of Lavco, Inc., and, although the corporation was not dissolved, it was reduced to an assetless shell. *See: Amader v. Pittsburgh Corning Corporation,* 546 F.Supp. 1033, 1036 (E.D.Pa.1982). Lavco, Inc. assumed all of the liabilities ordinarily necessary for the uninterrupted continuation of the business conducted by Wm. A. Lavelle & Son, Co. (Lavco, Inc. applied for and was granted an extension by Blue Cross/Blue Shield of the Wm. A. Lavelle & Son, Co. policy on the basis that the transaction was "a name change" in companies; Lavco, Inc. assumed various accounts payable by Wm. A. Lavelle & Son, Co. as well as all of its contracts for hauling; Lavco, Inc. identified itself to the Department of Labor and Industry as a successor corporation to Wm. A. Lavelle & Son, Co., and was given the same rate applicable to Wm. A. Lavelle & Son, Co.). There is one factor absent, namely, continuity of ownership since William A. Lavelle III is not an officer of, and has no ownership interest in Lavco, Inc., but instead his son, William A. Lavelle IV is the designated President of Lavco, Inc., while his daughters, Michelle and Kathleen, are secretary and treasurer, respectively, of the corporation. Nonetheless, for reasons discussed hereinafter, we find that the absence of an identity of legal ownership, under the circum-

stances of this case, is not an impediment to finding Lavco, Inc. to be the *de facto* successor corporation to William A. Lavelle & Son, Co. *See: Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1535 (S.D.N.Y.1985). *See also: Martin v. Johns–Manville Corp.*, 322 Pa.Super. 348, 469 A.2d 655 (1983) reversed on other grounds, 508 Pa. 154, 494 A.2d 1088 (1985); *Knapp v. North American Rockwell Corp.*, *supra; Turner v. Bituminous Casualty Co.*, *supra.*

The effect of a corporate merger or consolidation on the liabilities of the predecessor and successor corporations is set forth in Section 1907 of the Business Corporation Law, Act of May 5, 1933, P.L. 364, art. 1, §§ 1 *et seq.*, as amended by the Act of July 20, 1968, P.L. 459, No. 216, § 49, 15 P.S. § 1907. Section 1907 provides, in relevant part:

Upon the merger or consolidation becoming effective, the several corporations parties to the plan of merger or consolidation shall be a single corporation.... All the property, real, personal, and mixed and franchises of each of the corporations parties to the plan of merger or consolidation, and all debts due on whatever accounts to any of them including subscriptions to shares and other choses in action belonging to any of them, shall be taken and deemed to be transferred to and vested in the surviving new corporation, as the case may be, without further act or deed. The surviving or new corporation shall thenceforth be responsible for all the liabilities and obligations of each of the corporations so merged or consolidated, but the liabilities of the merging or consolidating corporations, or of their shareholders, directors, or officers, shall not be affected, nor shall the rights of the creditors thereof or of any persons dealing with such corporations, or any liens upon the property of such corporations, be impaired by such merger or consolidation, *and any claim existing or action or proceeding pending by or against any of such corporatiaons may be prosecuted to judgment as if such merger or consolidation had not taken place, or the surviving or new corporation may be proceeded against or substituted in*

*its place. Any taxes, penalties and public accounts of the Commonwealth, claimed against any of the merging or consolidatiang corporations, but not settled, assessed or determined prior to such merger or consolidation, shall be settled, assessed or determined against the surviving or new corporation,* and, together with interest thereon, shall be a lien against the franchises and property, both real and personal, of the surviving or new corporation.

15 P.S. § 1907 (emphasis supplied).

The Business Corporation Law thus provides that upon merger or consolidation, "any claim existing or action or proceeding pending" may be prosecuted to judgment against the predecessor corporation *or* the new corporation may be substituted in the place of the predecessor corporation. Moreover, the statute provides that any "penalties ... of the Commonwealth ... not assessed prior to such merger or consolidation, shall be settled, assessed or detemined against the surviving or new corporation...." Thus, under the unique facts of this case, where Lavco, Inc. was the *de facto* successor of William A. Lavelle & Son, Co., the Commonwealth was clearly empowered to institute criminal proceedings against Lavco, Inc. as the "surviving or new corporation" of a *de facto* merger, for the offenses committed by its predecessor. *See and compare: U.S. v. Polizzi,* 500 F.2d 856, 908–909 (9th Cir.1974).

■ We believe that the fraud exception to the general rule of non-liability of a purchasing corporation, i.e., where the transaction is fraudulently entered into to escape liability, also has application in the instant case. Lavco argues that it cannot be held criminally liable for the criminal acts of Wm. A. Lavelle & Son, Co., committed under the direction of William A. Lavelle, III, since there is no identity of ownership between the two corporations because the affairs of the corporation were directed and controlled by his three children, and not by William A. Lavelle, III.

The Commonwealth sought to establish at trial that the sole reason for the designation of these officers was to

conceal the ownership interest of William A. Lavelle, III, and thus shelter the proceeds of his racketeering activities from the reach of the government. We find that the evidence presented by the Commonwealth, although circumstantial, was sufficient to establish that William A. Lavelle III, assisted in the creation of Lavco, Inc. and retained an undisclosed ownership interest in Lavco, Inc., for the sole purpose of evading financial responsibility for his criminal acts. In fact, such a conclusion seems rather inescapable. There was considerable publicity in the latter part of 1978 and early in 1979 concerning an investigation of illegal dumping by a local hauler of industrial wastes. Lavco, Inc. was incorporated by Mitchell Miller (an attorney previously employed by William A. Lavelle, III) on December 21, 1978, and shortly thereafter, Wm. A. Lavelle & Son, Co. ceased conducting business, all of its contracts for hauling thereafter being performed by Lavco, Inc. William A. Lavelle III, while designated as a mere employee of Lavco, Inc. represented himself to the State of Virginia as President of Lavco, Inc. and also pledged his personal assets in order to obtain loans for Lavco, Inc. from the Scranton National Bank. The documents necessary to secure these loans for Lavco, Inc. were executed by William A. Lavelle, III, as a result of his presentation to the Bank of a "Certified Copy of Resolutions Authorizing Officers to Negotiate Loans", signed by the secretary of the corporation, which provided that Lavco, Inc., at a meeting of the Board of Directors on September 23, 1980, had authorized "William A. Lavelle III, Chairman" to negotiate and effect loans for Lavco. In addition, as has been earlier noted, Lavco indicated to Blue Cross/Blue Shield that Lavco, Inc. was a mere "name change" from Wm. A. Lavelle & Son, Co., and identified itself as a successor corporation to Wm. A. Lavelle & Son, Co. in documents filed with the Pennsylvania Department of Labor & Industry. Further, quarterly tax reports indicate that William A. Lavelle, III, was the only person to receive, as wages, substantial sums of money from Wm. A. Lavelle & Son, Co. and Lavco, Inc.. These records indicate that William A. Lavelle & Son, Co., during the first quarter of

1979 paid the following wages to its president, William A. Lavelle, III and its employee, William A. Lavelle, IV:

William A. Lavelle, III — $17,500  
William A. Lavelle, IV — 2,460

William A. Lavelle, III, claims he has no ownership interest in Lavco, Inc. However, Lavco paid its employee (William A. Lavelle, III) and its president (William A. Lavelle, IV) the following wages during the fourth quarter of 1980:

William A. Lavelle, III — $24,521.51  
William A. Lavelle, IV — 3,333.17

Similarly, Lavco paid the following wages to its "employee" and president, respectively, during the first quarter of 1981: [12]

William A. Lavelle, III — $32,605.63  
William A. Lavelle, IV — 2,064.55

The financial benefits realized by William A. Lavelle, III, from his salary as an employee of Lavco, Inc., when contrasted with the financial benefits realized by the President of the corporation who had an alleged 60% ownership share in the corporation, demonstrate that William A. Lavelle, III was more than a mere employee.

We believe the foregoing evidence was, when viewed as a whole, sufficient to establish that William A. Lavelle, III, was, at all relevant times, possessed of an undisclosed ownership interest in Lavco, Inc., and that the sole purpose for the concealment of that ownership interest was to avoid liability for the criminal acts committed by Wm. A. Lavelle & Son, Co. under the direction of William A. Lavelle III.

Thus, under both the *de facto* merger exception and the fraudulent transaction exception to the general rule of corporate non-liability of a transferee corporation, we find that Lavco, Inc. was properly held criminally liable for the

12. While the wages paid fluctuated with each quarter not set forth above, the unusual ratios, whereby the president and alleged 60% owner of Lavco, Inc. received a small fraction of the salary received by the "mere employee", did not change.

acts of its predecessor in interest, William A. Lavelle & Son, Co.

It has to be emphasized, however, that our holding here is not a pronunciation of a general rule concerning corporate successor liability or criminal acts of a predecessor corporation for, as our former colleague and eminent President Judge Edmund B. Spaeth, Jr., noted in *Martin v. Johns–Manville Corp. supra,* "[t]he issue of sufficient degree of identity is one that must be resolved on a case-by-case basis." *Id.* 322 Pa.Super. at 372 n. 22, 469 A.2d at 667 n. 22.

### B. Statute of Limitations

The argument that the prosecution of Lavco, Inc. was barred by the expiration of the two year statute of limitations provided by 42 Pa.C.S. § 5552(a) is rejected as meritless for the reasons set forth above in the appeal of William A. Lavelle, III.

### C. Rule 1100

■ Lavco, Inc. also argues that it is entitled to discharge because the trial did not commence until twenty days after expiration of the automatic rundate of Rule 1100. This claim is without merit since the record discloses that the trial court properly granted the Commonwealth's motion for an extension of time within which to commence trial after (1) excluding eleven days of delay attributable to appellant pursuant to an agreement entered into by its then attorney of record, and (2) finding that the delay in commencing trial was not the result of any conduct by the Commonwealth, which had at all times sought an earlier trial date, but rather, had resulted from defense requests for additional time in which to file pre-trial motions due to the complexity of the issues.

### D. Consolidation

■ Lavco argues that the trial court erred in directing that the trials of all three defendants be consolidated. This argument is based upon the misapprehension that consolidation enabled the Commonwealth to "smear Lavco with

alleged racketeering acts occuring before Lavco came into existence." First, we are compelled to observe that Lavco, Inc. was found guilty by a judge sitting without a jury. Thus, there was no danger of confusion on the part of a jury. Pa.R.Crim.P. 1127 A(1)(a). Consolidation was clearly proper in that all three defendants had participated "in the same series of acts or transactions constituting ana offense or offenses." Pa.R.Crim.P. 1127 A(2). *Commonwealth v. Brunner,* 305 Pa.Super. 411, 420–421, 451 A.2d 714, 718–719 (1982); *Commonwealth v. Norman,* 272 Pa.Super. 300, 304–307, 415 A.2d 898, 901–902 (1979).

■ Second, Lavco, Inc. was not found guilty of committing predicate offenses under the corrupt organization act. Rather, it was found criminally liable for the criminal acts committed by its predecessor in interest, Wm. A. Lavelle & Son, Co. Thus, even had Lavco, Inc. been tried separately, all of the evidence concerning the affairs of William A. Lavelle, III and Wm. A. Lavelle & Son, Co. would have been admitted into evidence as relevant to the issue of the criminal liability of Lavco, Inc. as a successor to Wm. A. Lavelle & Son, Co. The trial court thus properly consolidated the charges against all three defendants for purposes of trial, and Lavco, Inc. suffered no prejudice as a result of consolidation.

### E. *Remaining assertions of error.*

Lavco, Inc. also argues that certain documents were obtained from its accountant "in violation of the accountant-client privilege provided by 63 P.S. § 9.1." This issue, having been analyzed and correctly rejected in the opinion of the trial court, does not warrant further discussion.

■ Similarly meritless is the assertion that the evidence was insufficient to establish the underlying theft by deception offenses since "a corporation that generates industrial wastes cannot claim to be deceived when it is negligent and breaches its common law and statutory duties with regard to waste disposal." Since the evidence presented by the Commonwealth was certainly sufficient to establish each

element of the offenses of theft by deception beyond a reasonable doubt, this argument must be rejected.

■ And, finally, Lavco argues that it is entitled to a new trial because "the investigating grand jury presentment was defective on its face confusing gross income with net income...."

The Commonwealth concedes that the presentment of the Statewide Investigating Grand Jury mistakenly identified, at pages 17–18, the gross income of Wm. A. Lavelle & Son, Co. as net income and the net income as gross income. The Commonwealth argues, however, that the error was irrelevant and non-prejudicial and, in any event, any error was cured by subsequent proceedings.

The mislabeling of the gross and net income figures in the grand jury presentment did not in any way prejudice Lavco, Inc. Initially, we note that "[t]he inadequacy, incompetency, or illegality of the evidence presented to the grand jury do not constitute grounds for the quashing of an indictment on the basis of such evidence." *Commonwealth v. Webster*, 462 Pa. 125, 132, 337 A.2d 914, 917 (1975).

An investigating grand jury and an indicting grand jury "are separate legal bodies. Although both may have considered the same alleged crimes involving the same individuals, their proceedings, deliberations, and presentments are distinct. Extraneous matters affecting one may not influence the other, and irregularities before one are not always present in the other; the two bodies are unrelated in this respect. Consequently, an indictment by a regular grand jury is not necessarily tainted by some irregularity or improper influence alleged to have affected the investigating grand jury. *Commonwealth v. Gross*, [172 Pa.Super. 85, 92 A.2d 251 (1952)]. At least, the irregularity or improper influence must be shown to have also affected the indicting grand jury." *Commonwealth v. Evans*, 190 Pa. Super. 179, 198, 154 A.2d 57, 69 (1959), *aff'd., Commonwealth v. Evans*, 399 Pa. 387, 160 A.2d 407 (1960), *cert. denied*, 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960).

Our review of the record compels the conclusion that the transpositional error was not material to the issue before the grand jury and could not have affected either the deliberations of the investigating grand jury, or the indicting grand jury. Appellant has not presented any evidence of an *irregularity* affecting the investigating grand jury, a document of "little significance".[13] In the absence of such evidence, appellant cannot establish that any irregularity affected the indicting grand jury. Cf. *Commonwealth v. Levinson*, 480 Pa. 273, 389 A.2d 1062 (1978). Appellant is, therefore, not entitled to the relief requested. *See and compare: Commonwealth v. Evans, supra* 190 Pa.Super. at 67–68, 154 A.2d at 68–70; *Commonwealth v. McKeirnan*, 337 Pa.Super. 403, 405–409, 487 A.2d 7, 9–10 (1985); *Commonwealth v. Chew*, 338 Pa.Super. 472, 479–480, 487 A.2d 1379, 1383 (1985); *Commonwealth v. Meoli*, 307 Pa. Super. 50, 53, 452 A.2d 1032, 1034 (1982).

The judgment of sentence imposed upon William A. Lavelle, III, which is the subject of appeal No. 2928 Philadelphia 1985, is hereby affirmed.

The judgment of sentence imposed upon Lavco, Inc., which is the subject of appeal No. 3129 Philadelphia 1985, is hereby affirmed.

---

13. *In re County Investigating Grand Jury of April 24, 1981*, 500 Pa. 557, 563, 459 A.2d 304, 307 (1983).