Hughes *v.* Babcock, Appellant, et al.

476

Argued March 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*E. V. Buckley,* of *Mercer & Buckley,* for appellant.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 22, 1944:

Plaintiff instituted a trespass action against defendants, Fred C. Babcock and Babcock Lumber Company, to recover compensatory and punitive damages arising out of injuries sustained when the individual defendant ejected him from the private office of the Company of which the individual defendant was an officer. Plaintiff suffered a voluntary non-suit as to the Company, and the jury returned a verdict for the plaintiff against the individual defendant in the sum of $2,500 compensatory damages and $5,000 punitive damages. Defendant filed motions for judgment n. o. v. and a new trial. Motion for judgment n. o. v. was refused; the motion for a new trial was refused upon plaintiff filing a remittitur for $2,000 of the punitive damages award. Judgment was entered on the verdicts for $5,500. From these orders defendant appeals.

In an appeal from the refusal of the court below to grant judgment n. o. v., we must consider the testimony

in the light most favorable to plaintiff and all conflicts therein must be resolved in his favor: *Ranck v. Sauder,* 327 Pa. 177, 193 A. 269; *Delmer v. Pittsburgh Railways Co.,* 348 Pa. 147. The evidence discloses that, in the late afternoon of March 10, 1942, the plaintiff, desiring to obtain the signature of his brother-in-law on a political petition, went to the offices of the Company where the brother-in-law was employed as confidential secretary to E. V. Babcock, the company's president. Plaintiff went first to the reception room and inquired if his brother-in-law was in. Being informed that the latter was out of the office for a short time, plaintiff went into a private room occupied by clerks of the Company. Plaintiff took a vacant chair at a desk opposite one of the clerks and entered into conversation with him. Shortly thereafter defendant entered the room and inquired of plaintiff why he was there. Plaintiff told him that he was waiting for his brother-in-law. Defendant then asked the purpose of his visit, and plaintiff answered that it was his, plaintiff's, business. Plaintiff then undertook to inquire into the condition of the lumber business. Defendant told plaintiff that if he were there on business he would be taken care of, otherwise to "get the Hell out" of the room. Plaintiff testified that as he was preparing to comply, defendant turned from the door leading into the corridor, grasped plaintiff by his coat collar, pulled him out of the chair, and with his right hand grabbed the seat of his trousers, and pushed, shoved and lifted him across the room to the open door, and then shoved, pushed or threw him across the 7½ foot corridor or hallway. Plaintiff, under this momentum, came in violent contact with the far side of the marble hallway, fell to the floor, and experienced pain in his left arm near the shoulder. He testified that defendant then crossed the hallway and prodded him, as he was lying on the floor, with his foot. It was admitted by plaintiff on cross-examination, however, that the prodding was not a violent act nor was he hurt by this

action. As a result plaintiff sustained a fracture of the left humerus a few inches from the socket, in addition to some superficial bruises and abrasions.

It was testified that plaintiff had been going to the Company offices for years, not only because of the presence of his brother-in-law but because, he claimed, that he and the company's president, E. V. Babcock, were close acquaintances. Plaintiff also testified that until the incident giving rise to this action he had always been welcome and had never been told that he was not wanted upon the premises. Upon this evidence the jury would have been justified in inferring that until defendant ordered plaintiff to leave the premises, the latter was a licensee. Defendant's witness, Saxman, the clerk whose work plaintiff had interrupted, testified that plaintiff was "very obstinate about moving on" after being instructed to do so, and defendant testified that plaintiff seemed somewhat slow and reluctant to leave and therefore, on the spur of the moment, he determined to give him assistance.

Under these facts it was clearly the duty of the jury to determine, under proper instructions, whether or not defendant acted as a reasonably prudent person in evicting plaintiff. "The intentional infliction upon another of a harmful or offensive contact or other bodily harm by a means not intended to cause death or serious bodily harm is privileged for the purpose of preventing or terminating another's intrusion upon the actor's possession of land or chattels, if (a) the other's intrusion (i) is not privileged, or (ii) though privileged, the other intentionally or negligently causes the actor to believe his intrusion to be unprivileged, and (b) the actor reasonably believes that the other's intrusion can be prevented or terminated only by the immediate infliction of the harmful or offensive bodily contact, or other bodily harm, and (c) the means which the actor uses to prevent or terminate the intrusion are reasonable, and (d) *the actor has first requested the other to desist from the in-*

*trusion and the other has disregarded the request, . . ."*: Restatement, Torts, Section 77. The trial court instructed the jury that if it found plaintiff either refused or was reluctant to leave after he had in effect been called a trespasser by defendant, then defendant could use reasonable force to evict him. Whether or not plaintiff, by his conduct, *did* show an unwillingness to leave the premises and whether or not defendant *did* use force in excess of that which he had a legal right to use, were matters for the jury to decide and the court below properly refused judgment n. o. v.

Defendant complains that the verdict of $2,500 for compensatory damages was excessive. We are convinced, however, on the basis of the testimony, that the jury did not act unreasonably. Plaintiff was first in the hospital for approximately a week. A cast was placed on his left arm from wrist to shoulder, around the chest and part of the waist. The upper arm was set in this cast at right angles to the body, and the forearm in horizontal position with the hand pointing upward. The evidence discloses that plaintiff suffered severe pain and shock. Because of the rigidity and bulk of the cast, he was unable to dress and undress himself for a long time. Moreover, he could sleep only by lying flat on his back. He testified that the pain and nervousness caused him to lose considerable rest. When the cast was removed from the arm, plaintiff remained at the hospital for over a month, and received therapeutic and massage treatments necessitated by abrasions caused by the cast and atrophy caused by the immobilization. Subsequent to this, plaintiff lived at a hotel where it was convenient for him to receive further treatments. The doctor's bill was $200; the hospital bill $311.30; a health institute $225; and a practical nurse $75—a total of $811.30. Although the doctor admitted that there was "a good surgical result in this case", and that plaintiff's long hospitalization was primarily precautionary, and to prevent him from injuring himself in one of his frequent periods of in-

toxication, plaintiff suffered considerable pain and inconvenience and, when the case was tried, still suffered from limitation of motion in the arm and weakness of grip in the hand. Since the liquidated expenses amount to approximately $800, $1,700 of the $2,500 verdict was for pain and inconvenience (no claim being made for loss of earnings or earning power). This amount appears liberal, *but not inordinately so*. Furthermore, there is no reason to believe that the action of the jury was arbitrary, capricious, or discriminatory. The verdict for compensatory damages must be permitted to stand.

Punitive damages in a case such as this may only be awarded where *more than unreasonable force was used*. Because of the use of unreasonable force alone, the plaintiff has his remedy in a verdict for compensatory damages. The award of additional exemplary damages must be based on "malicious", "wanton", "reckless", "willful", or "oppressive" conduct on the part of defendant: *Thompson v. Swank*, 317 Pa. 158, 176 A. 211; *Tyler v. Phila. Ritz-Carlton Co.*, 75 Pa. Superior Ct. 353; *Adelman v. Rosenbaum*, 133 Pa. Superior Ct. 386, 3 A. 2d 15, and the cases cited therein. Defendant weighed approximately 200 pounds and was six feet tall. The court below describes him as giving "the appearance of being of the athletic type, and in perfect physical condition." He was twenty years younger than the plaintiff and at least fifty pounds heavier. It must also be remembered that the right to use force upon the plaintiff ceased at the point where the door of the *private* office opened upon the public corridor. In spite of this, plaintiff was hurled with a force violent enough to cause him to fall at the opposite side of the 7½ foot hallway and violent enough to result in the breaking of his arm. There is no evidence that plaintiff, by either word or action, threatened defendant with personal violence while the latter was ejecting him. In the light of these facts, the problem of determining whether the defendant

was guilty of outrageous, wanton, willful or recklessly violent conduct was properly submitted to the jury.

We believe, however, that the verdict for punitive damages, even as remitted to $3,000, is excessive. Although there is no fixed rule governing the amount which should be awarded as exemplary damages, it must not be disproportionate to the award of compensatory damages: *Thompson v. Swank,* supra; *Mitchell v. Randal,* 288 Pa. 518, 137 A. 171. It must be remembered that the compensatory verdict, while not excessive, is very substantial. Moreover, in determining the amount of punitive damages, not merely the act itself must be considered, but all the surrounding circumstances, including the motives of the wrongdoer, and the relations between the parties: Restatement, Torts, Section 908, comment e. The action causing plaintiff's injuries arose out of the ejection of plaintiff, as an alleged trespasser, from the defendant's property. The right to eject plaintiff existed; it was the manner of execution alone that is the basis of the wrong. The case is not to be compared, therefore, with those cases where one, with no justification or provocation, puts his hands upon another's person. Furthermore, although the jury by its verdict considered the action of defendant as unreasonable, it was not shown that defendant planned or hoped for bodily injury to plaintiff. For these reasons, the verdict for punitive damages appears excessive, and is reduced from $3,000 to $1,000. See *Voltz v. General Motors Acceptance Corporation,* 332 Pa. 141, 2 A. 2d 697; *Arye v. Dickstein,* 337 Pa. 471, 12 A. 2d 19.

The judgment of the court below, as modified, is affirmed.